UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JACQUELINE SACCOCCIO,

                                  Plaintiff,

                  - against -                                     06 CV 14351 (DLC)

RELIN, GOLDSTEIN & CRANE, LLP,                       ECF CASE

                                Defendant.
-------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO TRANSFER VENUE**

       Plaintiff JACQUELINE SACCOCCIO ("SACCOCCIO"), by her attorneys, McCormick Dunne & Foley, submits the following memorandum of law in opposition to the motion filed by defendant RELIN, GOLDSTEIN & CRANE, LLP ("RGC"), seeking -- pursuant to 28 U.S.C. § 1404(a) -- to have the action transferred to the Western District of New York.

**BACKGROUND**

       This is an action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o, challenging the propriety of, and seeking damages in relation to, a letter mailed by RGC to SACCOCCIO on or about April 4, 2006.

       The letter in question (a copy of which is annexed as exhibit "A" hereto) having been addressed to, and received by SACCOCCIO at, 66 Gansevoort Street, New York, New York (an address within the Southern District of New York), suit was filed in this district.

## **ARGUMENT**

A.         **Preliminary Matters**

Preliminarily, we pause to note that although RGC -- upon information and belief, a limited liability partnership -- appears in this action *pro se*, in actuality, given that only natural persons are authorized to appear *pro se* in federal court, said appearance should be regarded as invalid. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993) ("Thus, save in a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. § 1654, providing that 'parties may plead and conduct their own cases personally or by counsel,' does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney") (footnote omitted). *See also Savage Universal Corp. v. Grazier Constr., Inc.*, No. 04 Civ. 1089, 2004 WL 1824102, at *5 (S.D.N.Y. Aug. 13, 2004) ("Courts in every circuit have uniformly held that 28 U.S.C. § 1654 . . . does not allow corporations, partnerships, associations, or, indeed any party other than a natural person, to appear in federal court other than through a licensed attorney"); *Nike, Inc. v. Top Brand Co. Ltd.*, No. 00 Civ. 8179, 2005 WL 1654859, at *3 (S.D.N.Y. July 13, 2005) (same). Accordingly, it is submitted that RGC's motion should be rejected outright.

In addition, should this Court consider RGC's motion on the merits, we are compelled to point out that aside from coming up well short of its goal of demonstrating that a transfer to Rochester is warranted, RGC's motion papers contain several averments that are simply dead wrong. Thus, while Mr. Shur asserts that SACCOCCIO "cannot maintain that 'a substantial part of the events or omissions giving rise to this claim . . .' occurred in the Southern District," (Shur Affidavit at ¶ 6), the Second Circuit has expressly and unequivocally held otherwise. *See Bates v. C & S Adjusters, Inc.*, 980

F.2d 865, 868 (2d Cir. 1992) ("We conclude that receipt of a collection notice is a substantial part of the events giving rise to a claim under the Fair Debt Collection Practices Act").

Similarly invalid in light of *Bates* (a case that, ironically, concerns an effort to transfer venue *out of* the Western District of New York) is Mr. Shur's naked allegation that "the only reason this matter was venued in the Southern District is because that is where Plaintiff's attorney is located" (Shur Affidavit at ¶ 8).

Lastly, RGC's position to the effect that "when venue is 'proper in a district pursuant to 28 U.S.C. § 1391(b)(1), venue does not lie elsewhere pursuant to 28 U.S.C. 1391(b)(2)," (RGC's memorandum of law at ¶ 7), is one-hundred percent erroneous.  *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005) ("We thus join several other circuits in holding that the civil venue statute permits venue in multiple judicial districts as long as 'a substantial part' of the underlying events took place in those districts").

**B.        The Factors Significant to a Motion to Transfer under § 1404(a)**

Turning now to the heart of the matter, we begin with this Court's observation that "a plaintiff's choice of forum is usually entitled to considerable weight, and should not be disturbed unless the balance of factors weighs strongly in favor of the defendant." *Dyson, Inc. v. Maytag Corp.*, No. 06 Civ. 6576, 2006 WL 2884921, at *3 (S.D.N.Y. Oct. 11, 2006).  *See also Tyco Int'l Ltd. v. Walsh*, No. 02 Civ. 4633, 2003 WL 553580, at * 4 (S.D.N.Y. Feb. 27, 2003); *GTFM, Inc. v. Park*, No. 02 Civ. 7020, 2002 WL 31890940, at *1 (S.D.N.Y. Dec. 30, 2002).

As to the factors to be considered in conjunction with a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), this Court has identified the following:

> (1) the convenience of witnesses, (2) the convenience of parties; (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Azari v. B & H Photo Video*, No. 06 Civ. 7825, 2007 WL 13101, at *2 (S.D.N.Y. Jan. 3, 2007) (*citing Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998)). *See also Dyson, at * 2*; *Portman v. Alza Corp.*, No. 05 Civ. 10018, 2006 WL 1330029, at *1 (S.D.N.Y. May 17, 2006); *International Bus. Mach. Corp. v. Fair Isaac Corp.*, No. 05 Civ. 10296, 2006 WL 726034, at *2 (S.D.N.Y. Mar. 23, 2006).

**1.      Witness Convenience**

Apart from the fact that actions brought under the FDCPA (a strict liability statute) are not uncommonly disposed of on paper with little or no discovery, the only "witnesses" to which RGC's motion papers refer are its own "attorneys and employees," party witnesses whose convenience is less important a consideration than that of non-party witnesses (none of which have been identified by RGC). *See Flowserve Corp. v. BMCE, Inc.*, No. 05 Civ. 8075, 2006 WL 2927176, at *3 (S.D.N.Y. Oct. 12, 2006); *Savoy Owners Assocs., Inc. v. Insurance Corp. of N.Y.*, No. 02 Civ. 6145, 2003 WL 941098, at *3 (S.D.N.Y. Mar. 6, 2003).

Additionally, and more significantly, according to *Savoy Owners*, a defendant that raises witness convenience in conjunction with venue transfer motion must, in order to meet its burden of proof:

-4-

>provide the Court with a list of probable witnesses who will be inconvenienced by the current forum and a general statement of what the witnesses' testimony will cover.

*Savoy Owners*, at *2. *See also General Elec. Capital Corp. v. Titan Aviation, LLC*, No. 06 Civ. 4795, 2007 WL 107752, at *6-7 (S.D.N.Y. Jan. 16, 2007); *Kiss My Face Corp. v. Bunting*, No. 02 Civ. 2645, 2003 WL 22244587, at *1 (S.D.N.Y. Sept. 30, 2003).[1]

At bar, no witness list has been provided, and RGC's "general statement," contained in ¶ 8 of its memorandum of law, should be deemed woefully inadequate (if for no reason other than the fact that the document to which it cites, the affidavit of Joseph M. Shur, Esq., contains absolutely no information whatsoever about what RGC's nameless witnesses will cover).[2]

The first factor therefore does <u>not</u> support the requested transfer.

**2.      Party Convenience**

While RGC resides in the Western District of New York, SACCOCCIO resides in close proximity to, and spends the majority of each work week in, the Southern District of New York. *See* accompanying affidavit of Jacqueline Saccoccio, sworn to on February 13, 2007. Accordingly, the convenience that the proposed transfer would bring to RGC is offset by the inconvenience it would cause SACCOCCIO.

---

[1] The requirement that witnesses be specifically listed is well documented even among the cases cited in RGC's memorandum of law. *See, e.g., Praxair, Inc. v. Morrison Knudsen Corp.*, No. 00-CV-0892, 2001 WL 118585 (W.D.N.Y. Feb. 6, 2001); *Nabisco, Inc. v. Brach's Confections, Inc.*, No. 00 Civ. 5875, 2000 WL 1677935 (S.D.N.Y. Nov. 8, 2000); *Student Advantage, Inc. v. International Student Exch. Cards, Inc.*, No. 00 Civ. 1971, 2000 WL 1290585 (S.D.N.Y. Sept. 13, 2000).

[2] RGC's "general statement" is also noteworthy for listing at least one (1) "critical issue" that is clearly

The second factor therefore does not support the requested transfer.

**3.     Location of Relevant Documents and Relative
          Ease of Access to Sources of Proof**

RGC's motion papers do not refer to "relevant documents" or "sources of proof" -- aside from RGC's alleged (and anonymous) party witnesses, discussed above.

The third factor therefore does not support the requested transfer.

**4.     Locus of Operative Facts**

The operative facts in this action occurred in the Southern District of New York, because that is where the address to which the subject debt collection letter was mailed and received is located (and thus where the FDCPA violation occurred).

The fourth factor therefore does not support the requested transfer.

**5.     Availability of Process to Compel Attendance of Unwilling Witnesses**

RGC's papers make no mention of "unwilling witnesses," let alone advance a claim that their attendance could more easily be compelled if the action were transferred as it requests.

---

feigned, *i.e.*, the issue of whether the subject letter was in fact sent by RGC to SACCOCCIO.

The fifth factor therefore does <u>not</u> support the requested transfer.

**6.        Relative Means of Parties**

RGC cannot seriously contend (and, in any event, has not contended) that its means are exceeded by SACCOCCIO's.

The sixth factor therefore does <u>not</u> support the requested transfer.

**7.        Forum's Familiarity with Governing Law**

No one can rationally maintain that the judges of the Southern District of New York lack extensive familiarity with the FDCPA.

The seventh factor therefore does <u>not</u> support the requested transfer.

**8.        Weight Accorded Plaintiff's Choice of Venue**

SACCOCCIO resides near, and spends most of every work week in, the Southern District of New York, in which is situated the address to which the subject debt collection letter was mailed and at which it was received by SACCOCCIO.  Accordingly, SACCOCCIO's choice of forum is entitled to "great weight."  *See Tyco*, 2003 WL 553580, at *4; *GTFM*, 2002 WL 31890940, at *1.

The eighth factor therefore does <u>not</u> support the requested transfer.

**9.**     **Trial Efficiency and Interest of Justice, Based on Totality of Circumstances**

Lastly, and perhaps most critically, it is submitted that public policy considerations weigh strongly against moving this action clear across the State of New York. As held in *Murphy v. Allen County Claims & Adjustments, Inc.*, 550 F. Supp. 128 (S.D. Ohio 1982):

> We do not want to permit the defendant-debt collectors to engage in practices that may violate the FDCPA and harass persons in other districts, and then force such persons to come to the defendants' district to bring suit against them.

*Murphy*, 550 F. Supp. at 132. *See also Gonsalves v. National Credit Sys., Inc.*, No. N-89-559, 1990 U.S. Dist. LEXIS 20944 (D. Conn. Aug. 13, 1990).

Similarly instructive, even though concededly arising in the context of a debate over jurisdiction (not a discretionary venue transfer), is the following:

> Where an alleged debtor is located in a jurisdiction and receives documents from a person purporting to be a debt collector located elsewhere, and the transmittal of those documents is claimed to have violated the [FDCPA], suits may be brought where the debtor . . . receive[s] the communications. *Otherwise, one could invoke the protection of distance and send violative letters with relative impunity, at least so far as less well-funded parties are concerned.*

*Sluys v. Hand*, 831 F. Supp. 321, 324 (S.D.N.Y. 1993) (emphasis added).

No doubt in light of the foregoing, at least in part, venue transfer motions of the sort filed by RGC are routinely denied in FDCPA cases. *See, e.g., Elwood v. Cobra Collection Agency*, No. 2:06cv91, 2006 WL 3694594 (S.D. Miss. Dec. 14, 2006); *Mullins v. Equifax Info. Servs., LLC*, No. Civ.A. 3:05CV888, 2006 WL 1214024 (E.D. Va. Apr. 28, 2006); *Hyman v. Hill & Assocs.*, No. Civ.A. 05 C 6486, 2006 WL 328260 (N.D. Ill. Feb. 9, 2006).

The ninth factor therefore does <u>not</u> support the requested transfer.

## **CONCLUSION**

Based upon all of the foregoing, it is respectfully submitted that an analysis of the relevant factors leads to the unmistakable conclusion that RGC has failed to carry its heavy burden of demonstrating the propriety of a transfer to the Western District of New York, and that, therefore, if this Court decides to consider RGC's motion (notwithstanding the invalidity of its *pro se* appearance), same should be denied.

Dated:    New York, New York
          February 15, 2007

                                        Yours, etc.,

                                        MCCORMICK DUNNE & FOLEY

                                        By:    s/
                                               Christopher P. Foley (CF 6079)

                                        Attorneys for Plaintiff
                                        Office and P.O. Address
                                        61 Broadway, Suite 2100
                                        New York, New York  10006
                                        (212) 363-1300